# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| PLUMBERS' WELFARE FUND, LOCAL 130 U.A. | ) ) ) | |
| Plaintiff, | ) ) | No. 26 C 1718 |
| v. | ) ) | Hon. Martha M. Pacold |
| | ) | Hon. Heather K. McShain |
| EXPRESS SCRIPTS, INC., EVERNORTH HEALTH SERVICES, and THE CIGNA GROUP, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' MOTION TO STAY DISCOVERY

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...........................................................................................................1

BACKGROUND .............................................................................................................3

LEGAL STANDARD ......................................................................................................5

ARGUMENT ...................................................................................................................6

I. A STAY WILL REDUCE BURDEN ON THE PARTIES AND THE COURT BECAUSE PLAINTIFF SEEKS BURDENSOME CLASS DISCOVERY TO BOLSTER RICO FRAUD CLAIMS IT DOES NOT PROPERLY PLEAD .....................6

    A. Discovery Should Be Stayed Because Discovery Is "Inappropriate" While A Motion To Dismiss Plaintiff's RICO Claims Is Pending .....................................6

    B. Discovery Should Be Stayed Because The Motion To Dismiss Raises A Dispositive Threshold Issue (RICO Standing) .........................................................8

    C. Discovery Should Be Stayed Because Plaintiff Brings A Putative Class Action And Seeks Premature Class- and Company-Wide Discovery ....................9

    D. Discovery Should Be Stayed Because Of The Heightened Pleading Standard ...........................................................................................................10

II. A STAY WILL SIMPLIFY THE ISSUES WITHOUT PREJUDICE TO PLAINTIFF ...........................................................................................................12

CONCLUSION ................................................................................................................13

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Bd. of Educ. of Joliet Twp. High Sch., Dist. 204 v. Publicis Health, LLC*,
No. 24 CV 11435, 2025 WL 2590381 (N.D. Ill. Sept. 8, 2025)..................................................8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..................................................................................................................1, 6

*Bianchi v. Tonigan*,
No. 12 C 0364, 2012 WL 5906536 (N.D. Ill. Nov. 26, 2012)....................................................8

*Blue Chip Stamps v. Manor Drug Stores*,
421 U.S. 723 (1975)......................................................................................................................7

*Calderon v. Procter & Gamble Co.*,
No. 22-CV-3326, 2022 WL 20742696 (N.D. Ill. Oct. 6, 2022) ...............................................10

*Chandler v. Zinus, Inc.*,
No. 20-CV-265-RJD, 2020 WL 12846610 (S.D. Ill. Sept. 10, 2020) ........................................9

*Coss v. Playtex Prods., LLC*,
No. 08 C 50222, 2009 WL 1455358 (N.D. Ill. May 21, 2009) ..................................................2

*Cristofoletti v. Transform SR LLC*,
No. 23 CV 1318, 2024 WL 6864046 (N.D. Ill. Oct. 22, 2024) .................................................7

*DSM Desotech Inc. v. 3D Sys. Corp.*,
No. 08 CV 1531, 2008 WL 4812440 (N.D. Ill. Oct. 28, 2008) ............................................2, 8

*Duneland Dialysis LLC v. Anthem Ins. Cos.*,
No. 409-CV-36-RLM-PRC, 2010 WL 1418392 (N.D. Ind. Apr. 6, 2010) ...............................8

*Est. of Enoch v. Tienor*,
No. 07-C-376, 2008 WL 410656 (E.D. Wis. Feb. 11, 2008)....................................................12

*Gress v. SafeSpeed, LLC*,
No. 20-CV-756, 2021 WL 3472631 (N.D. Ill. 2021) ................................................................9

*In re Groupon Derivative Litig.*,
882 F. Supp. 2d 1043 (N.D. Ill. 2012) .......................................................................................5

*Harper v. Cent. Wire, Inc.*,
No. 19 CV 50287, 2020 WL 5230746 (N.D. Ill. Sept. 2, 2020)................................................6

*Limestone Dev. Corp. v. Vill. of Lemont*,
520 F.3d 797 (7th Cir. 2008) ......................................................................2, 6, 7

*United States ex rel. Liotine v. CDW-Gov't, Inc.*,
No. CIV. 05-033-DRH, 2009 WL 720958 (S.D. Ill. Mar. 18, 2009) .....................................11

*Mirage Wine + Spirit's, Inc. v. Apple Inc.*,
No. 3:23-CV-3942-DWD, 2024 WL 4581172 (S.D. Ill. Oct. 25, 2024) .................................9

*Morrison v. YTB Int'l, Inc.*,
No. CIV 08-579-GPM, 2010 WL 1931127 (S.D. Ill. May 13, 2010).....................................9

*Nexstar Broad., Inc. v. Granite Broad. Corp.*,
No. 1:11-CV-249, 2011 WL 4345432 (N.D. Ind. Sept. 15, 2011) ....................................6, 7

*Omnireps, LLC v. CDW Corp.*,
No. 1:23-CV-00868, 2024 WL 2052069 (N.D. Ill. May 8, 2024)...............................11, 12, 13

*Patterson v. Avery Dennison Corp.*,
281 F.3d 676 (7th Cir. 2002) ........................................................................5

*R.E. Davis Chem. Corp. v. Nalco Chem. Co.*,
757 F. Supp. 1499 (N.D. Ill. 1990) ..................................................................9

*Rao v. JPMorgan Chase Bank, N.A.*,
No. 21 C 1361, 2021 WL 4927415 (N.D. Ill. May 12, 2021) .........................................13

*Richards v. Fashion Nova, LLC*,
807 F. Supp. 3d 861 (S.D. Ind. 2025)................................................................9

*Rodriguez v. Ford Motor Co.*,
No. 21 C 2553, 2022 WL 704780 (N.D. Ill. Mar. 9, 2022) .................................3, 9, 10, 12, 13

*Roofers' Unions Welfare Tr. Fund v. CaremarkPCS Health, LLC*,
No. 1:26-cv-00162 (D.R.I. filed Mar. 18, 2026)......................................................11

*Ryder v. Hyles*,
27 F.4th 1253 (7th Cir. 2022) .......................................................................8

*Simstad v. Scheub*,
No. 2:07 CV 407, 2008 WL 1914268 (N.D. Ind. 2008).................................................12

*SK Hand Tool Corp. v. Dresser Indus., Inc.*,
852 F.2d 936 (7th Cir. 1988) ........................................................................5

*In re Sulfuric Acid Antitrust Litig.*,
231 F.R.D. 331 (N.D. Ill. 2005)..................................................................3, 6, 12

*Tamburo v. Dworkin*,
  No. 04 C 3317, 2010 WL 4867346 (N.D. Ill. Nov. 17, 2010) ...................................................2

*Viehwig v. City of Mount Olive*,
  No. 21-CV-3126, 2021 WL 4432821 (C.D. Ill. Sept. 27, 2021) .............................................12

*Vital Proteins, LLC v. Ancient Brands, LLC*,
  No. 1:22-CV-02265, 2023 WL 5671857 (N.D. Ill. Sept. 1, 2023) ..........................3, 10, 11, 12

*Zemco Mfg., Inc. v. Navistar Int'l Transp. Corp.*,
  270 F.3d 1117 (7th Cir. 2001) ...............................................................................................12

**Statutes**

18 U.S.C. § 1962(c) ...................................................................................................................4

18 U.S.C. § 1962(d) ...................................................................................................................4

**Other Authorities**

Fed. R. Civ. P. 9(b) ..........................................................................................1, 3, 6, 10, 11, 12

Fed. R. Civ. P. 12(b)(6)..............................................................................................................6

Fed. R. Civ. P. 26(b)(1)..............................................................................................................5

Fed. R. Civ. P. 26(c)(1)..............................................................................................................5

Fed. R. Civ. P. 26(f)...................................................................................................................5

Fed. R. Civ. P. 34.......................................................................................................................2

Defendants Express Scripts, Inc. ("**ESI**" or "**Express Scripts**"), Evernorth Health Services ("**Evernorth**"), and The Cigna Group ("**Cigna**") respectfully move to stay discovery pending resolution of Defendants' motion to dismiss (Dkt. 42), for which the Court will hear oral argument on November 4, 2026 (Dkt. 46). Pursuant to Local Rule 37.2 and this Court's standing order, the parties conferred by videoconference on May 11, 2026, via Zoom. The parties were not able to resolve the dispute and Plaintiff Plumbers' Welfare Fund, Local 130 U.A. opposes this motion.

### INTRODUCTION

Every hallmark of a case warranting a preliminary stay of discovery is present here: Racketeer Influenced and Corrupt Organizations Act ("**RICO**") claims of sweeping international scope, contested standing, a putative nationwide class with thousands of members, fraud allegations subject to Rule 9(b)'s heightened pleading standard, and extremely burdensome early discovery requests seeking structured data across thousands of FDA-approved brand drugs, among other things. Each feature independently favors a stay because the "potential [discovery] expense is obvious." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007).

As explained in Defendants' memorandum in support of their motion to dismiss (Dkt. 45 ("**MTD**")), Plaintiff attempts to repackage a standard commercial dispute into an international RICO conspiracy in which Defendants allegedly colluded through fourteen "bilateral RICO enterprises" with "nearly every major drug company" in the world. Compl. ¶ 14; MTD at 3, 9–23. The alleged conspiracy spans seven years, implicates "billions of dollars" and "millions of patients," and purports to involve nearly all FDA-approved brand drugs—thousands of products manufactured by nearly every major drug company. Compl. ¶¶ 2, 7, 14, 32–45, 55. Plaintiff casts virtually every communication Express Scripts has had with its customers, drug manufacturers, and the public as predicate "acts of racketeering activity" and "wire fraud" (*id.* ¶¶ 226–34; MTD at 20–21), and seeks to certify a nationwide class of essentially "all entities" that do business with

Express Scripts.  Compl. ¶ 210.  But before the Court has even determined whether any claim is viable (they are not), Plaintiff now demands extensive class and RICO discovery.  *See* Johnson Decl. Ex. A (Plaintiff's First Set of Requests For Production ("RFPs")); Ex. B (Plaintiff's First Set of Interrogatories ("Rogs")).

The Court should stay discovery pending resolution of the motion to dismiss for at least five reasons.

***First***, RICO cases demand heightened caution on discovery.  The Seventh Circuit has stressed that RICO cases, like antitrust cases, "require discovery that is 'likely to be more than usually costly,'" and accordingly, "burdensome discovery in RICO cases during the pendency of a motion to dismiss is inappropriate." *Coss v. Playtex Prods., LLC*, No. 08 C 50222, 2009 WL 1455358, at *2 (N.D. Ill. May 21, 2009) (quoting *Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 803 (7th Cir. 2008) (Posner, J.)).  Such caution is especially warranted here, where Plaintiff has already served discovery demands that are "extensive, voluminous, and expensive to produce" and of a "highly sensitive subject matter[.]" *DSM Desotech Inc. v. 3D Sys. Corp.*, No. 08 CV 1531, 2008 WL 4812440, at *3 (N.D. Ill. Oct. 28, 2008) (granting stay of discovery pending motion to dismiss where defendant was asked to produce every relevant "sales contract," "piece of communication with customers and potential customers," and "highly-sensitive" "internal communications-information").  That caution is doubly warranted given Plaintiff's attempt to expand even further to require "[p]roduction of all relevant materials previously produced to government agencies" through the scheduling order, trying to bypass Rule 34 altogether.  *See* Dkt. 39 at 2.

***Second***, the motion to dismiss raises a "potentially dispositive threshold issue." *Tamburo v. Dworkin*, No. 04 C 3317, 2010 WL 4867346, at *1 (N.D. Ill. Nov. 17, 2010).  As an indirect

purchaser, Plaintiff lacks RICO standing entirely. *See* MTD at 15–18. That dispositive, threshold failure independently justifies a stay.

*Third*, "courts regularly stay discovery pending a ruling on a motion to dismiss" in putative class actions because a ruling in Defendants' favor "in whole or in part—could greatly affect the cost and scope of discovery taken." *Rodriguez v. Ford Motor Co.*, No. 21 C 2553, 2022 WL 704780, at *2 (N.D. Ill. Mar. 9, 2022).

*Fourth*, Plaintiff's fraud claims are subject to Rule 9(b)'s heightened pleading standard. Allowing "expansive discovery" now would "undercut the purposes of Rule 9(b)" by permitting Plaintiff to "engage in discovery in the hopes of uncovering enough specifics to adequately plead a case." *Vital Proteins, LLC v. Ancient Brands, LLC*, No. 1:22-CV-02265, 2023 WL 5671857, at *6 (N.D. Ill. Sept. 1, 2023) (quotation omitted).

*Fifth*, a stay of discovery will simplify the issues or entirely resolve the matter, without prejudice to Plaintiff, because "discovery is generally considered inappropriate while a motion that would be thoroughly dispositive of the claims in the Complaint is pending." *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331, 336 n.4 (N.D. Ill. 2005) (quotation omitted).

## BACKGROUND

Express Scripts administers prescription drug benefits on behalf of health plans, employers, and unions, making medications safer and more affordable for tens of millions of Americans. MTD at 1. One way Express Scripts does so is by leveraging the buying volume of its clients to negotiate rebates and discounts from drug manufacturers. *Id.* Express Scripts is also a member of non-party Ascent Health Services ("Ascent"), a group purchasing organization ("GPO"), that aggregates purchasing volume across multiple participants to drive deeper discounts from drug manufacturers—discounts that are likewise passed on to clients pursuant to the terms of their

contracts. *Id.* at 2. Express Scripts discloses its participation in Ascent to its clients in their contracts. *Id.*

Plaintiff contracted with Express Scripts for Pharmacy Benefit Management ("**PBM**") services to manage the prescription drug benefits it provides to its members. Compl. ¶ 77. On February 17, 2026, Plaintiff filed this putative nationwide class action asserting five counts: (1) violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c); (2) RICO conspiracy, 18 U.S.C. § 1962(d); (3) breach of contract; (4) breach of the implied covenant of good faith and fair dealing; and (5) unjust enrichment. *Id.* ¶¶ 217–68. The Complaint alleges that Defendants operated a "Formulary Manipulation Scheme" through fourteen "bilateral RICO enterprises" with fourteen different drug manufacturers, in which drug companies paid fees to Ascent in exchange for formulary access and favorable formulary placements from Express Scripts. *Id.* ¶¶ 14, 191–96. The proposed class encompasses "all entities" that contracted with Express Scripts for PBM services over a period of more than seven years. *Id.* ¶ 210.

On April 14, 2026, Plaintiff served its first set of RFPs and Interrogatories. Johnson Decl. Ex. A, Ex. B. The requests sweep broadly: they seek all contracts between Express Scripts and its PBM customers containing a "Financial Disclosure to ESI PBM Clients" (RFP 5); all internal communications concerning the creation of and changes to that Financial Disclosure (RFP 4); all communications between Defendants and drug manufacturers concerning Ascent (RFP 12); all documents provided to any governmental or regulatory entity concerning Ascent (RFP 1); identification of all ESI PBM customer contracts in effect during the Relevant Time Period and whether each contained the Financial Disclosure (Rog. 2); and identification of all persons with knowledge of the creation of Ascent, its involvement with drug discounts and rebates, and the design and implementation of ESI's drug formularies (Rog. 1). Johnson Decl. Ex. A; Ex. B. For

each of these requests, Plaintiff defines the Relevant Time Period as "January 1, 2019, to the date of your response, including any supplemental or amended response." Johnson Decl. Ex. A at 5; Ex. B at 4. Express Scripts serves approximately 2,500 clients representing nearly 100 million people.[1] The burden these requests impose is substantial by any measure.

On April 16, 2026, the parties filed a Joint Status Report that included a Rule 26(f) Discovery Plan (Dkt. 39) setting forth the parties' proposed discovery schedules. Plaintiff proposed that Defendants be required to reproduce all materials previously produced to government agencies by June 5, 2026. Dkt. 39 at 2. Defendants objected because Plaintiff did not identify which "government agencies" or which "productions" it was referring to and ignored Rule 26(b)(1)'s proportionality requirement by demanding "all relevant material." *Id.* at 2 n.2.

On April 28, 2026, Defendants moved to dismiss all five counts (Dkt. 42). Defendants now move to stay discovery pending resolution of that motion to dismiss.

## LEGAL STANDARD

District courts have "broad discretion in matters relating to discovery." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002). Although filing a motion to dismiss does not automatically stay discovery, *SK Hand Tool Corp. v. Dresser Indus., Inc.*, 852 F.2d 936, 945 (7th Cir. 1988), a court may stay discovery for good cause. *See* Fed. R. Civ. P. 26(c)(1). Courts generally consider three factors when determining whether to grant a stay: (1) whether a stay will simplify the issues in question; (2) whether a stay will reduce the burden of litigation on the parties and on the court; and (3) whether a stay will unduly prejudice or tactically disadvantage the non-moving party. *In re Groupon Derivative Litig.*, 882 F. Supp. 2d 1043, 1045 (N.D. Ill. 2012).

---

[1]     The Cigna Group, Quarterly Report (Form 10-Q), Ex. 20.1, at 1 (May 5, 2023), https://www.sec.gov/Archives/edgar/data/1739940/000173994023000016/exhibit201-supplementalpbm.htm.

Courts grant stays of discovery pending a motion to dismiss with "substantial frequency," and "numerous cases in [the Seventh Circuit] have allowed stays in the face of a Rule 12(b)(6) challenge." *In re Sulfuric Acid*, 231 F.R.D. at 336 (collecting cases).

## ARGUMENT

**I. A STAY WILL REDUCE BURDEN ON THE PARTIES AND THE COURT BECAUSE PLAINTIFF SEEKS BURDENSOME CLASS DISCOVERY TO BOLSTER RICO FRAUD CLAIMS IT DOES NOT PROPERLY PLEAD**

Plaintiff's discovery demands are premature and burdensome, four times over. ***First***, Plaintiff demands extensive discovery, which is "inappropriate" during the pendency of a motion to dismiss RICO claims. This applies with particular force here, where Plaintiff seeks discovery into Defendants' highly-sensitive commercial relationships with fourteen of the largest pharmaceutical companies in the world. ***Second***, discovery should be stayed because the motion to dismiss raises threshold dispositive issues. Plaintiff should not be permitted to impose burdensome discovery without first demonstrating it has RICO standing. ***Third***, courts routinely stay discovery pending motions to dismiss in putative class actions, given the extraordinary burden nationwide class discovery entails. ***Fourth***, a stay is necessary to prevent Plaintiff from using discovery as a vehicle to cure pleading deficiencies under Rule 9(b).

**A. Discovery Should Be Stayed Because Discovery Is "Inappropriate" While A Motion To Dismiss Plaintiff's RICO Claims Is Pending**

A stay of discovery is proper in a "complex case[]" while a motion to dismiss is pending. *See Nexstar Broad., Inc. v. Granite Broad. Corp.*, No. 1:11-CV-249, 2011 WL 4345432, at *3 (N.D. Ind. Sept. 15, 2011). Although antitrust is the paradigmatic example of litigation in which discovery should await resolution of a motion to dismiss, *see Twombly*, 550 U.S. at 558, the Seventh Circuit has "extend[ed] the [*Twombly*] rationale" to RICO cases, *Harper v. Cent. Wire, Inc.,* No. 19 CV 50287, 2020 WL 5230746, at *3 (N.D. Ill. Sept. 2, 2020) (citing *Limestone*, 520

6

F.3d at 803). That is because "RICO cases, like antitrust cases, are 'big' cases and the defendant should not be put to the expense of big-case discovery on the basis of a threadbare claim." *Limestone*, 520 F.3d at 803. Accordingly, discovery "during the pendency of a motion to dismiss [in a RICO case] is inappropriate." *Nexstar*, 2011 WL 4345432, at *3 (citing *Limestone*, 520 F.3d at 802–04).

Plaintiff's claims are threadbare. As set forth in Defendants' motion to dismiss, Plaintiff fails to allege: a RICO enterprise with a common purpose among the fourteen bilateral "PBM Fraud Enterprises"; an enterprise distinct from the legitimate business activities of the Defendants and the unnamed parties; a pattern of racketeering activity attributable to any named Defendants; or any predicate acts with particularity. MTD at 9–22. Despite these foundational failures, Plaintiff seeks to "force[]" Defendants to undergo such "costly discovery" even though its Complaint "fail[s] to state a claim of fraud" and lacks sufficient allegations to "indicate that the plaintiff has a substantial [RICO] case," *Limestone*, 520 F.3d at 802–03, which it does not.

Nearly all of Plaintiff's discovery requests relate to its "largely groundless" RICO claims. *Limestone*, 520 F.3d at 803 (quoting *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 741 (1975)). For example, RFP 12 seeks "[a]ll communications between [Defendants] and drug manufacturers concerning Ascent," which goes directly to Plaintiff's implausible fourteen "bilateral association-in-fact RICO enterprises"—enterprises that the motion to dismiss demonstrates are legally deficient on their face. MTD at 9–13. RFP 1, which demands wholesale reproduction of discovery of documents provided to various government agencies, is improper cloned discovery that tracks the investigations Plaintiff cites as the basis for its defective RICO theory. Compl. ¶¶ 46–51. Courts routinely reject such tactics. *See, e.g., Cristofoletti v. Transform SR LLC*, No. 23 CV 1318, 2024 WL 6864046, at *11 (N.D. Ill. Oct. 22, 2024). RFP 6 asks for

documents sufficient to "show the payments Ascent received from drug manufacturers," covering all branded drugs—a staggering demand for transactional data likely covering **billions** of prescriptions over seven years. RFP 11 seeks "[a]ll documents concerning the creation of Ascent, including documents concerning the purposes for Ascent's creation," likewise has no relevance to any of Plaintiff's claims other than its deficient RICO claims. Defendants' motion to dismiss is therefore likely to simplify the issues and narrow the scope of discovery (or eliminate the need for discovery entirely). *DSM Desotech*, 2008 WL 4812440, at *3 (granting stay in the "[a]bsen[ce] [of] circumstances presenting a compelling need for prompt discovery").

**B.      Discovery Should Be Stayed Because The Motion To Dismiss Raises A Dispositive Threshold Issue (RICO Standing)**

Stays of discovery are similarly appropriate where "the motion raises a potentially dispositive threshold issue[], such as a challenge to the plaintiff's standing." *Duneland Dialysis LLC v. Anthem Ins. Cos.*, No. 409-CV-36-RLM-PRC, 2010 WL 1418392, at *2 (N.D. Ind. Apr. 6, 2010); *Bianchi v. Tonigan*, No. 12 C 0364, 2012 WL 5906536, at *1 (N.D. Ill. Nov. 26, 2012) (courts stay discovery "where the motion will resolve an important threshold issue.").

Among other reasons, Defendants moved to dismiss Plaintiff's RICO claims for failure to plead RICO standing because Plaintiff is an indirect purchaser barred from bringing suit under the Seventh Circuit's well-established indirect-purchaser doctrine. MTD at 15–18. Although RICO standing is a prudential limitation (MTD at 15) that the Seventh Circuit has clarified is "akin to" but not "precis[ely]" the same as Art. III standing, *Ryder v. Hyles,* 27 F.4th 1253, 1256 (7th Cir. 2022), courts uniformly treat RICO standing as a dispositive threshold issue to resolve before all others. *See Bd. of Educ. of Joliet Twp. High Sch., Dist. 204 v. Publicis Health, LLC*, No. 24 CV 11435, 2025 WL 2590381, at *5 (N.D. Ill. Sept. 8, 2025) ("Because the absence of causation is a dispositive defect in plaintiffs' complaint, I do not reach the other issues briefed by the parties.");

*Gress v. SafeSpeed, LLC*, No. 20-CV-756, 2021 WL 3472631, at \*10 (N.D. Ill. 2021) (finding it "unnecessary to resolve" other RICO issues where "[p]laintiff lacks standing due to his failure to plead facts plausibly suggesting that his injury ... was proximately caused by Defendants' RICO-violative conduct"); *see also Mirage Wine + Spirit's, Inc. v. Apple Inc.*, No. 3:23-CV-3942-DWD, 2024 WL 4581172, at \*4 (S.D. Ill. Oct. 25, 2024) (treating prudential antitrust standing as "one such dispositive issue" warranting a stay of discovery).

Resolving Plaintiff's standing failure requires no discovery. The question is purely legal: whether an indirect purchaser can overcome *Illinois Brick's* bar against RICO suits brought by indirect purchasers (MTD at 15–18). It cannot. *Id.* Permitting expansive RICO discovery to go forward under these circumstances would impose precisely the burden that the stay doctrine is designed to prevent. *R.E. Davis Chem. Corp. v. Nalco Chem. Co.*, 757 F. Supp. 1499, 1504 n.1 (N.D. Ill. 1990) (staying discovery in light of "the numerous defects present in plaintiff's RICO claims").

### C. Discovery Should Be Stayed Because Plaintiff Brings A Putative Class Action And Seeks Premature Class- and Company-Wide Discovery

The Court should also stay discovery pending resolution of the motion to dismiss because Plaintiff brings a putative nationwide class action, which has "the potential to entail costly and burdensome discovery." *Richards v. Fashion Nova, LLC*, 807 F. Supp. 3d 861, 866 (S.D. Ind. 2025) (quotation omitted). "Given the burden, time, and expense often associated with responding to discovery in a putative class action, courts regularly stay discovery pending a ruling on a motion to dismiss." *Rodriguez*, 2022 WL 704780, at \*2; *see also Morrison v. YTB Int'l, Inc.*, No. CIV 08-579-GPM, 2010 WL 1931127, at \*2 (S.D. Ill. May 13, 2010) ("economies of resources for the parties and the Court plainly weigh in favor of a stay"); *Chandler v. Zinus, Inc.*, No. 20-CV-265-RJD, 2020 WL 12846610, at \*1 (S.D. Ill. Sept. 10, 2020) (granting stay).

A stay of discovery is particularly warranted where, as here, Defendants' pending motion to dismiss "argues that Plaintiff's entire class action complaint is legally defective," *Calderon v. Procter & Gamble Co.*, No. 22-CV-3326, 2022 WL 20742696, at \*2 (N.D. Ill. Oct. 6, 2022), and Plaintiff's requests seek "far-reaching, company-wide information," an "expensive and time-consuming" undertaking that may not be necessary, *Rodriguez*, 2022 WL 704780, at \*2. Such "company-wide discovery" is unquestionably burdensome, *Calderon*, 2022 WL 20742696, at \*2, yet that is exactly what Plaintiff seeks **on a class-wide scale**. For example, RFP No. 5 seeks every contract between Express Scripts and every putative class member containing the "Financial Disclosure to ESI PBM Clients"—potentially thousands of contracts spanning more than seven years across Express Scripts' more than 2,500 clients. Interrogatory No. 2 demands identification of every Express Scripts customer contract "in effect during the Relevant Time Period" and whether each contained the Financial Disclosure. And RFP No. 3 seeks documents sufficient to show "all descriptions or explanations" Defendants provided to every putative class member concerning the Financial Disclosure, Ascent's role, and formulary design. Each request, standing alone, would impose substantial burden. Together, they constitute exactly the kind of "far-reaching, company-wide information" that courts find warrants a stay.

**D.      Discovery Should Be Stayed Because Of The Heightened Pleading Standard**

A stay is also warranted because Plaintiff failed to "satisfy the heightened pleading standard of Rule 9(b)." *Vital Proteins*, 2023 WL 5671857, at \*6. Plaintiff's predicate act allegations list only generic categories of communications that occurred across the alleged fourteen bilateral "PBM Fraud Enterprises," not any specific fraudulent communications. MTD at 20–23. Where Defendants raise "sufficient questions regarding whether [the plaintiff] has pled its [claims] in compliance with Rule 9(b)'s standard," that "support[s] the issuance of a stay of discovery until the issue is decided by the District Court." *Vital Proteins*, 2023 WL 5671857, at \*6; *see, e.g.*,

10

*Omnireps, LLC v. CDW Corp.*, No. 1:23-CV-00868, 2024 WL 2052069, at *2 (N.D. Ill. May 8, 2024) ("Courts in this circuit have found stays appropriate where motions to dismiss raise issues such as … a failure to satisfy Rule 9(b)") (collecting cases).

Rule 9(b)'s heightened pleading standard serves four purposes: "(1) to minimize the extortionate impact that a baseless claim of fraud can have on a firm or an individual, (2) to deter parties from including accusations simply to gain leverage for settlement or for other ulterior motives, (3) to protect parties from reputational harm and minimize 'fishing expeditions,' and (4) to eliminate the filing of a conclusory complaint as a pretext for using discovery to uncover wrongs." *Vital Proteins*, 2023 WL 5671857, at *6 (citations omitted). Permitting discovery before resolving a Rule 9(b) pleading deficiency "would undercut [these] purposes," *id.*, by "allowing a [plaintiff] to make vague claims of fraud, and then permitting him to engage in discovery in the hope of uncovering enough specifics to adequately plead a case." *United States ex rel. Liotine v. CDW-Gov't, Inc.*, No. CIV. 05-033-DRH, 2009 WL 720958, at *1 (S.D. Ill. Mar. 18, 2009).

That concern is not abstract here. One month after filing this action, Plaintiff's counsel filed a virtually identical complaint against CaremarkPCS Health, LLC and CVS Health Corporation, alleging the same racketeering claims, based on the same "Formulary Manipulation Scheme," involving the same fourteen manufacturers, with CaremarkPCS's GPO "Zinc Health Services" substituted for Ascent. MTD at 3 n.1; *Roofers' Unions Welfare Tr. Fund v. CaremarkPCS Health, LLC*, No. 1:26-cv-00162 (D.R.I. filed Mar. 18, 2026), Dkt. 1 ¶¶ 4, 21–45. These serial template filings against successive PBMs confirm that Plaintiff's RICO claims are a generalized attack on standard industry conduct, not specific allegations of ***fraud*** by Express Scripts. Permitting discovery under these circumstances would reward exactly the kind of

"conclusory complaint as a pretext for using discovery" that Rule 9(b) is designed to prevent. *Vital Proteins*, 2023 WL 5671857, at *6 (quotation omitted).

## II.     A STAY WILL SIMPLIFY THE ISSUES WITHOUT PREJUDICE TO PLAINTIFF

The remaining factors also support staying discovery. ***First***, a stay is likely to simplify, or eliminate, the issues in question. Defendants moved to dismiss all five counts alleged in the Complaint, which would dispose of the case entirely. That alone justifies granting a stay of discovery, which is "appropriate where the motion to dismiss can resolve the case." *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. at 337. Beyond Plaintiff's deficient RICO claims (MTD at 9–23), Plaintiff's breach of contract and equitable claims are foreclosed by the plain language of the operative PBM Agreement (MTD at 24–29; Dkt. 45-1); a pure question of law this Court can resolve without any discovery. *See Zemco Mfg., Inc. v. Navistar Int'l Transp. Corp.*, 270 F.3d 1117, 1123 (7th Cir. 2001) ("[I]nterpretation of an unambiguous contract is a question of law") (citation omitted); *Simstad v. Scheub*, No. 2:07 CV 407, 2008 WL 1914268, at *1 (N.D. Ind. 2008) ("Limitations on pretrial discovery are appropriate where claims may be dismissed based on legal determinations") (citation omitted); *Omnireps*, 2024 WL 2052069, at *2 (stay appropriate where the motion to dismiss "turn[s] on a question of law"); *Est. of Enoch v. Tienor*, No. 07-C-376, 2008 WL 410656, at *1 (E.D. Wis. Feb. 11, 2008) ("In reality, the motion to dismiss challenges the legal sufficiency of the complaint, so discovery is not necessary for the Court to make its ruling as a matter of law").

Even if the Court dismisses the RICO claims but allows the contract claims to proceed (it should not), a stay would still be warranted. Eliminating the RICO claims would "greatly affect the cost and scope of discovery taken," *Rodriguez*, 2022 WL 704780, at *2, and "greatly narrow the issues," *Viehwig v. City of Mount Olive*, No. 21-CV-3126, 2021 WL 4432821, at *1 (C.D. Ill. Sept. 27, 2021) by eliminating or narrowing the vast majority of Plaintiff's discovery demands—

including all requests about the fourteen alleged RICO enterprises, worldwide communications with drug manufacturers, and communications with Ascent. The substantial potential savings in time and expense weigh heavily in favor of a stay.

**Second**, a stay would not unduly prejudice or tactically disadvantage Plaintiff. "A 'mere delay in plaintiff's ability to proceed to discovery caused by the stay amounts to little, if any, prejudice.'" *Omnireps*, 2024 WL 2052069, at \*2 (quoting *Rao v. JPMorgan Chase Bank, N.A.*, No. 21 C 1361, 2021 WL 4927415, at \*1 (N.D. Ill. May 12, 2021)). There is "no indication here that 'witnesses or documents will be lost or no longer discoverable if discovery is stayed.'" *Id.* (ellipsis omitted) (quoting *Rodriguez*, 2022 WL 704780, at \*1). This case "is largely in its early stages, the parties have not yet engaged in discovery, and no deterioration of evidence concerns have been raised." *Id.* (footnote omitted). The equities therefore favor Defendants, not Plaintiff.

<u>**CONCLUSION**</u>

For the foregoing reasons, Defendants' motion to stay discovery pending resolution of the motion to dismiss should be granted.

May 14, 2026

Respectfully submitted,

*/s/ Tyler C. Murray*

Tyler C. Murray
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606
tylermurray@quinnemanuel.com

Michael Lyle
Eric C. Lyttle (admitted *pro hac vice*)
Meghan A. McCaffrey (admitted *pro hac vice*)
Alec A. Levy (admitted *pro hac vice*)
Samuel Johnson (admitted *pro hac vice*)
Maia Livengood (admitted *pro hac vice*)
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
555 13th St., Suite 600
Washington, DC 20004
mikelyle@quinnemanuel.com
ericlyttle@quinnemanuel.com
meghanmccaffrey@quinnemanuel.com
aleclevy@quinnemanuel.com
samueljohnson@quinnemanuel.com
maialivengood@quinnemanuel.com

*Attorneys for Defendants*

## LOCAL RULE 37.2 CERTIFICATION

Pursuant to Local Rule 37.2 and this Court's rules, I certify that the parties met and conferred regarding this motion on May 11, 2026 via Zoom videoconference for approximately 40 minutes. Attending on behalf of Plaintiff were Li Yu, Donald Ecklund, Terence Ziegler, and Frank Partnoy. Attending on behalf of Defendants were Samuel Johnson and Alan Litman. The parties made a good faith attempt to resolve this dispute but were unable to do so.

/s/ *Samuel J. Johnson*
Samuel J. Johnson