PLUMBERS' WELFARE FUND,
LOCAL 130 U.A.,

*Plaintiff,*

v.

EXPRESS SCRIPTS, INC.,
EVERNORTH HEALTH SERVICES,
and THE CIGNA GROUP,

*Defendants.*

CASE NO.: 1:26-cv-01718

## MEMORANDUM IN SUPPORT OF MOTION TO REASSIGN RELATED CASE

Local Rule 40.4 provides a mechanism for avoiding the inefficiency that arises when separate cases raising common legal or factual questions are assigned to different Judges. If such cases were to proceed separately, two Judges of this Court would be required to spend duplicative time and effort. There also would be a risk of conflicting rulings on anything from third-party discovery disputes to the legal issues at the core of the case. CaremarkPCS Health, L.L.C. ("Caremark") and CVS Health Corporation (collectively, the "*Roofers* Defendants") are defendants in *Roofers' Union Welfare Tr. Fund v. Caremark PCS Health, LLC*, No. 1:26-cv-05729 (N.D. Ill.), a case recently transferred from the District of Rhode Island and randomly assigned to Judge Harjani, which presents overlapping legal and factual issues to those already presented to this Court in the above-captioned matter. The *Roofers* Defendants therefore move this Court to reassign their case as related to this matter, because doing so would eliminate the risks of inconsistent rulings and promote judicial efficiency.

# BACKGROUND

The same lawyers representing two unions have filed two putative class action lawsuits, alleging the same claims against two leading pharmacy benefit managers ("PBMs"). The claims in both cases relate to the creation of group purchasing organizations ("GPOs") that provide valuable services to their health-plan clients. The plaintiffs originally filed suit in separate courts, but now both cases are pending in this Court, assigned to different judges.

*First*, on February 17, 2026, Plumbers' Welfare Fund, Local 130 U.A. ("Plumbers") filed a lawsuit against Express Scripts, Inc., Evernorth Health Services, and the Cigna Group (the "Express Scripts Defendants"). Complaint (ECF No. 1) ("*Plumbers* Compl."). Plumbers alleged that the Express Scripts Defendants, along with "Ascent Health Services"—a GPO—"and non-party drug companies, orchestrated" a "scheme to sell access to the drug formularies used by its PBM customers (the 'Formulary Manipulation Scheme')." *Plumbers* Compl. ¶ 5. Plumbers alleged that "[d]efendants implemented this scheme by using Express Scripts' negotiating power to convince drug companies to divert exorbitant 'fees' to Ascent, which traditionally would have been considered rebates and passed on to Express Scripts' PBM customers, like Plumbers' Welfare Fund and the Class." *Id*. Plumbers brought five legal claims: (1) violation of RICO, (2) RICO conspiracy, (3) breach of contract, (4) breach of the implied covenant of good faith and fair dealing, and (5) unjust enrichment. *Id.* ¶¶ 218, 239, 247, 257, 264. Plumbers' state-law claims arise under Illinois law. *See* Mot. to Dismiss (ECF No. 43) Ex. A ("*Plumbers* Mot. to Dismiss").

The Express Scripts Defendants have moved to dismiss and most recently to stay discovery pending resolution of their motion to dismiss. *See Plumbers* Mot. to Dismiss; Mot. to Stay (ECF No. 47) ("*Plumbers* Mot. to Stay"). Plumbers' oppositions are due June 16, 2026, and May 28, 2026, respectively. *See* Apr. 14, 2026 Minute Entry (ECF No. 38); Apr. 20, 2026 Minute Entry

(ECF No. 41).  Argument on the motion to dismiss is scheduled for November 4, 2026.  *See* Apr. 29, 2026 Minute Entry (ECF No. 46).

*Second*, just over one month after filing *Plumbers*, the same lawyers filed suit on behalf of Roofers' Union Welfare Trust Fund (Local 11) ("*Roofers*") against Caremark and CVS Health Corporation in the District of Rhode Island.  Complaint, *Roofers' Union Welfare Tr. Fund v. CaremarkPCS Health, LLC*, No. 1:26-cv-05729 (ECF No. 1) (N.D. Ill. May 18, 2026) ("*Roofers* Compl.").[1]  *Roofers* made almost verbatim allegations against Caremark, related to a GPO called Zinc Health Services, L.L.C. ("Zinc"), alleging that the *Roofers* Defendants, Zinc, "and non-party drug companies, orchestrated" a "scheme to sell access to its drug formularies—the 'Formulary Manipulation Scheme.'" *Id.* ¶ 4.  As in *Plumbers*, the *Roofers* plaintiffs claim that "Caremark implemented this scheme by using its negotiating power to convince drug companies to divert exorbitant payments to its sister company, Zinc, for routine PBM services, rather than using its negotiating power to secure those payments as greater rebates for Roofers and the Class." *Id*. Roofers brought the same five legal claims that Plumbers brought against the Express Scripts Defendants.  *Id.* ¶¶ 207, 228, 242, 246, 251.  Roofers' state-law claims arise under Illinois law, pursuant to a contractual choice-of-law provision.

Although Roofers originally filed its lawsuit in the District of Rhode Island, its contract with Caremark contains a mandatory forum-selection clause that chooses this Court.  Accordingly, on May 13, 2026, Caremark and CVS Health Corporation moved to transfer *Roofers* to this Court. Mot. to Transfer, *Roofers' Union Welfare Tr. Fund v. CaremarkPCS Health, LLC*, No. 1:26-cv-05729 (ECF No. 21) (N.D. Ill. May 13, 2026) ("*Roofers* Mot. to Transfer").[2]  Plaintiffs consented

---

[1] A copy of the *Roofers* complaint is attached as Exhibit 1.

[2] A copy of the *Roofers* motion to transfer is attached as Exhibit 2.

to that relief, which the Rhode Island Court granted on May 15, 2026.  *See* Order, *Roofers' Union Welfare Tr. Fund v. CaremarkPCS Health, LLC*, No. 1:26-cv-05729 (ECF No. 21) (N.D. Ill. May 15, 2026) ("*Roofers* Order Granting Transfer").[3]  *Roofers* was then transferred and randomly assigned, on May 18, 2026, to Judge Harjani.  *See* May 18, 2026 Minute Entry, *Roofers' Union Welfare Tr. Fund v. CaremarkPCS Health, LLC*, No. 1:26-cv-05729 (ECF No. 23) (N.D. Ill. Apr. 3, 2026) ("Judge Harjani Assignment").[4]  Prior to transfer, the *Roofers* Defendants' motion to dismiss was due on June 9, 2026.  *See* Order, *Roofers' Union Welfare Tr. Fund v. CaremarkPCS Health, LLC*, No. 1:26-cv-05729 (ECF No. 6) (N.D. Ill. Apr. 3, 2026) ("*Roofers* Order Granting Extension of Time to File Answer").[5]  The *Roofers* Defendants have sought leave to extend that deadline to June 30, 2026, in light of the transfer.  *See* Mot. to Extend, *Roofers' Union Welfare Tr. Fund v. CaremarkPCS Health, LLC*, No. 1:26-cv-05729 (ECF No. 25) (N.D. Ill. May 29, 2026) ("*Roofers* Mot. to Extend").

## ARGUMENT

I.      **The Court Should Reassign *Roofers* to This Court as Related to *Plumbers*.**

"The judiciary has an interest, independent of litigants' goals, in avoiding messy, duplicative litigation."  *Ewing v. Carrier*, 35 F.4th 592, 594 (7th Cir. 2022).  Local Rule 40.4 protects that interest, allowing the reassignment of cases that are "related" to the Judge overseeing the earlier-filed case, whenever doing so would be efficient and avoid the potential for conflicting rulings.  Here, it would be more efficient for *Plumbers* and *Roofers* to be assigned to this Court, which could then resolve the many common legal and factual issues the cases present efficiently, without the risk of divergent or inconsistent rulings.

---

[3] A copy of the order is attached as Exhibit 3.
[4] A copy of the minute entry is attached as Exhibit 4.
[5] A copy of the order is attached as Exhibit 5.

### A. *Plumbers* and *Roofers* Are "Related."

Two cases are related if they "involve some of the same issues of fact or law." Local R. 40.4(a)(2). The rule "'does not require complete identity of issues in order for cases to be considered related.'" *McClain v. Capital Vision Servs.*, 2026 WL 710926, at *9 (N.D. Ill. Mar. 13, 2026) (quoting *Fairbanks Cap. Corp. v. Jenkins*, 2002 WL 31655277, at *2 (N.D. Ill. Nov. 25, 2002)). Instead, "commonality of just 'some of the same issues of fact or law' is 'sufficient to establish relatedness.'" *Id.* (quoting *Glob. Pat. Holdings, LLC v. Green Bay Packers, Inc.*, 2008 WL 1848142, at *3 (N.D. Ill. Apr. 23, 2008)); *see also Urban 8 Fox Lake Corp. v. Nationwide Affordable Hous. Fund 4, LLC*, 2019 WL 2515984, at *3 (N.D. Ill. June 18, 2019) ("Local Rule 40.4(a) requires only that the potentially related case share some of the same issues of fact or law, not that the key issue is the same in both cases."). *Plumbers* and *Roofers* present multiple common issues of law and fact that make them "related" under Local Rule 40.4.

### 1. *Plumbers* and *Roofers* Present Many Identical Issues of Law.

The union plaintiffs in both *Plumbers* and *Roofers* bring the same legal claims, premised on allegations that are near carbon copies of each other, and the state-law claims arise under Illinois law in each case. *Compare Plumbers* Compl. ¶¶ 218, 239, 247, 257, 264, *with Roofers* Compl. ¶¶ 207, 228, 242, 246, 251. As a result, the cases present many of the same legal issues. The Court need look no further than the Express Scripts Defendants' motion to dismiss for just ***some*** of the common (and dispositive) legal issues that the two cases share, for example:

- Whether plaintiffs have pled a supposed RICO enterprise as arising, independently, between the Express Scripts Defendants and a set of 14 pharmaceutical manufacturers, and also, independently, between the *Roofers* Defendants and the same exact set of 14 pharmaceutical manufacturers. *Compare Plumbers* Compl. ¶ 196 (alleging 14 bilateral "Cigna [entity]-[Manufacturer] RICO enterprises"), *with Roofers* Compl. ¶ 183 (alleging 14 bilateral RICO enterprises between *Roofers* Defendants and the same 14 manufacturers); *see also Plumbers* Mot. to Dismiss at 3 & n.1.

- Whether RICO's indirect-purchaser rule precludes RICO claims against pharmacy benefit managers like Caremark and Express Scripts related to rebates and drug prices. *See Plumbers* Mot. to Dismiss at 15–16.

- Whether plaintiffs allege any RICO enterprise distinct from both the predicate act and defendants' ordinary business dealing. *Compare Plumbers* Compl. ¶¶ 196(a)–(n) (parties associated to conduct the enterprise in that they "facilitate coverage determination, reimbursement, and rebate payments"), *with Roofers* Compl. ¶¶ 180, 183(a)–(n) (same); *and Plumbers* Compl. ¶¶ 35–45 (the manufacturers conducted legitimate business when they "interfaced with Express Scripts relating to coverage determination, reimbursement, and rebate payment."), *with Roofers* Compl. ¶¶ 31–44 (same); *see also Plumbers* Mot. to Dismiss at 11.

- Whether Illinois recognizes claims for unjust enrichment or implied covenant of good faith and fair dealing related to GPO conduct where the plaintiff has an express contract with the PBM it sues about such conduct. *Compare Plumbers* Compl. ¶¶ 260, 264, *with Roofers* Compl. ¶¶ 247, 251; *see also Plumbers* Mot. to Dismiss at 27–28.

- Whether plaintiffs have alleged a breach of any contractual provision, where plaintiffs each claim to have contractual provisions stating that any compensation received from pharmaceutical companies and retained by Express Scripts or Caremark would be payments "for the provision of services, such as care management, program administration, adverse event and other data reporting, and fulfillment services." *Compare Roofers* Compl. ¶ 6, *with Plumbers* Compl. ¶ 6; *see also Plumbers* Mot. to Dismiss at 26–27.

Any one of these common legal issues would be enough, on its own, for the Court to find the cases "related." *See, e.g.*, *Kane v. Loyola Univ. of Chi.*, 2024 WL 6979630, at \*2 (N.D. Ill. Dec. 20, 2024) (finding cases related based solely on a single overlapping legal issue related to one of multiple legal theories brought in each case); *Urban 8*, 2019 WL 2515984, at \*3 (finding cases related because each involved a similar legal issue regarding "the interpretation and application of the same or similar Sale Preparation Fee as set forth in the respective partnership agreements"). And those are just the common legal issues presented by the Express Scripts Defendants' pending threshold motion to dismiss. If the cases were to somehow survive motions to dismiss and proceed to discovery, common legal issues will abound, given the similar RICO "enterprises" plaintiffs allege, as well as the overlapping Illinois tort and contract theories.

## 2. *Plumbers* and *Roofers* Present Many Identical Issues of Fact.

This legal commonality carries over to the respective factual allegations in *Plumbers* and *Roofers*. The complaints are carbon copies of each other, with whole sections cut-and-pasted with only a change from "Express Scripts" to "Caremark":

For example, both cases allege the same "Formulary Manipulation Scheme," by which the defendants in each case are accused of engaging in a RICO enterprise with the same 14 pharmaceutical manufacturers to allegedly increase the price of the same medications:

- Plumbers: "In truth, Express Scripts and its corporate parents, Defendants Cigna, and Evernorth, together with non-party Cigna entity Ascent Health Services ('Ascent') and non-party drug companies, orchestrated an elaborate, fraudulent scheme to sell access to the drug formularies used by its PBM customers (the 'Formulary Manipulation Scheme'). As part of this conspiracy, Express Scripts manipulated its formularies to give access and preferential placement to high-cost brand drugs." *Plumbers* Compl. ¶ 5; *see also id.* ¶ 220 (identifying AbbVie, Amgen, AstraZeneca, Bayer, Bristol-Myers Squibb, Boehringer Ingelheim, Eli Lilly, Gilead Sciences, Johnson & Johnson, Merck, Novartis, Novo Nordisk, Pfizer, and Sanofi as manufacturers with whom the Express Scripts Defendants engaged in independent RICO enterprises); *id.* ¶¶ 32, 33, 38, 43 (making allegations about Humira, Enbrel, Ozempic, and Trulicity).

- Roofers: "In truth, Caremark and CVS, together with CVS subsidiary Zinc Health Services, LLC ('Zinc') and non-party drug companies, orchestrated an elaborate, fraudulent scheme to sell access to its drug formularies—the 'Formulary Manipulation Scheme.' As part of this conspiracy, Caremark manipulated its formularies to give access and preferential placements to high-cost drugs, in place of effective low-price drugs." *Roofers* Compl. ¶ 4; *see also id.* ¶ 183 (identifying AbbVie, Amgen, AstraZeneca, Bayer, Bristol-Myers Squibb, Boehringer Ingelheim, Eli Lilly, Gilead Sciences, Johnson & Johnson, Merck, Novartis, Novo Nordisk, Pfizer, and Sanofi as manufacturers with whom Caremark engaged in independent RICO enterprises); *id.* ¶¶ 31, 32, 37, 42 (making allegations about Humira, Enbrel, Ozempic, and Trulicity).

As a second example, both cases also challenge the creation and operations of the GPOs, the fees those GPOs collect, and the supposed increased medication prices that allegedly resulted:

- Plumbers: "From April 15, 2019, the date of Ascent's creation, to the present (the "Class Period"), Defendants have withheld billions of dollars . . . [because] rather than negotiating to maximize the rebates to be shared with ESI PBM customers—

the primary mechanism by which Express Scripts promised to deliver lower drug costs for the Class—Defendants instead used their control over Express Scripts' formularies to direct drug companies to make payments to Ascent, Express Scripts' sister company. Defendants falsely label these unlawful bribes and kickbacks as 'rebate administration' and other 'bona fide service' fees for Ascent." *Plumbers* Compl. ¶ 7.

- Roofers: "From March 18, 2020, the date of Zinc's creation, to the present (the "Class Period"), Defendants have used the Formulary Manipulation Scheme to withhold from the Class billions of dollars . . . [because r]ather than negotiating to maximize the rebates to be shared with CVS PBM customers—the primary mechanism by which Caremark promised to deliver lower drug costs for the Class—Defendants instead used their control over Caremark's formularies to direct the drug companies to make payments to Zinc, Caremark's sister company. Defendants falsely label these unlawful bribes and kickbacks as 'rebate administration' and other 'bona fide service' fees for Zinc." *Roofers* Compl. ¶ 8.

- Plumbers: "Ascent is a 'GPO' in name only. Traditionally, GPOs purchase drugs and other medical supplies on behalf of a group of health care providers like hospitals. By aggregating a large group of purchasers, a typical GPO providing bona fide services to clients gains additional leverage to secure better pricing. As the largest PBM, ESI manages prescription drug coverage for 85 million patients covered by ESI PBM customers across the United States. Express Scripts therefore already had massive negotiating leverage and had no need to create a GPO to obtain the leverage it already possessed." *Plumbers* Compl. ¶ 87.

- Roofers: "Zinc is a 'GPO' in name only. Traditionally, GPOs purchase drugs and other medical supplies on behalf of a group of health care providers like hospitals. By aggregating a large group of purchasers, a typical GPO providing bona fide services to a group of clients gains additional leverage to secure better pricing. However, Defendants did not aggregate purchasers in creating Zinc, defying the logic of a GPO. Zinc is a wholly-owned subsidiary of CVS, and only negotiates on behalf of Caremark, and thus does not provide for more leverage than Caremark would negotiating for itself." *Roofers* Compl. ¶ 86.

- Plumbers: "Ascent . . . functions as a conduit through which Defendants have collected exorbitant bribes and kickbacks without having to disclose those monies or share them with Express Scripts' PBM customers." *Plumbers* Compl. ¶ 12.

- Roofers: "Zinc . . . functions as a conduit through which Defendants have collected exorbitant bribes and kickbacks without having to disclose those monies or share them with Caremark's PBM customers, as contractually required." *Roofers* Compl. ¶ 13.

And both cases are brought by union health plans, claiming the PBM they hired breached its contract with the plaintiff because of GPO conduct:

- Plumbers: "Defendants have been able to orchestrate the Formulary Manipulation Scheme by leveraging the negotiating power that Express Scripts has over drug companies because of its control over the drug formularies used by Plumbers' Welfare Fund and the Class. Instead of using this power to serve the interests of ESI PBM customers as Express Scripts promised, Defendants abused their leverage to further their own financial interest to the detriment of the ESI PBM customers." *Plumbers* Compl. ¶ 8.

- Roofers: "Defendants have been able to orchestrate their Formulary Manipulation Scheme by leveraging the negotiating power that Caremark has over drug companies because of its control over the drug formularies used by Roofers and the Class. Instead of using this power to serve the interests of CVS PBM customers as Caremark promised, Defendants abused their leverage to further their own financial interest to the detriment of Caremark PBM customers." *Roofers* Compl. ¶ 9.

- Plumbers: "Defendants have disguised payments from drug companies that would be deemed 'Rebates' and 'Manufacturer Administrative Fees' if paid directly to Express Scripts. This allows Express Scripts to avoid paying ESI PBM customers the rebates contractually guaranteed to them, and instead, funnel monies that should be negotiated and categorized as rebates directly to Defendants." *Plumbers* Compl. ¶ 86.

- Roofers: "Defendants have disguised payments from drug companies that would be deemed 'rebates' if paid directly to Caremark. This allows Caremark, through Zinc, to extract payments from drug manufacturers in exchange for formulary access and placement and to funnel monies it contractually agreed to pay Caremark PBM clients to Defendants." *Roofers* Compl. ¶ 85.

- Plumbers: "Rather than having Express Scripts itself negotiate with drug companies on behalf of ESI PBM customers (as Express Scripts did until the creation of Ascent), Defendants created Ascent to negotiate with drug companies and receive fees that would not be shared with ESI PBM customers as rebates or administrative fees. That is, Ascent was created to perform the primary function (negotiating drug prices with drug companies) that ESI PBM customers retained Express Scripts to perform, and which Express Scripts itself had been performing prior to the creation of Ascent." *Plumbers* Compl. ¶ 85.

- Roofers: "Rather than having Caremark itself negotiate on behalf of its clients as a GPO (as it had done until the creation of Zinc, and as provided for in Caremark's contracts with the Class), Defendants CVS and Caremark created Zinc to negotiate with drug manufacturers and receive fees that would not be shared with Caremark PBM customers as rebates or administrative fees. That is, Zinc was created to

perform the primary function (negotiating drug prices with manufacturers) that Caremark PBM customers retained Caremark to perform, that Caremark promised to perform, and which Caremark itself had been performing prior to the creation of Zinc." *Roofers* Compl. ¶ 84.

- Plumbers: "While Defendants have falsely claimed that Ascent is paid for providing GPO services or 'rebate administration services' neither is the true reason for the billions of dollars that drug companies have paid Ascent. Instead, these payments from drug companies to Ascent are payments for formulary access and preferential formulary placement that Express Scripts has exacted from drug companies . . ." *Plumbers* Compl. ¶ 90.

- Roofers: "While Defendants have falsely claimed that drug companies pay Zinc for providing bona fide GPO services or rebate administration services, neither is the true reason for the exorbitant payments received by Zinc. Instead, drug companies have made those payments in return for Caremark giving them access to and preferential placement in the formularies . . ." *Roofers* Compl. ¶ 89.

Here, too, any one of these common factual issues would be enough to find the cases "related." *See, e.g.*, *Brunner v. Jimmy John's, LLC*, 2016 WL 7232560, at *2 (N.D. Ill. Jan. 14, 2016) ("the claims need not neatly overlap" as Local Rule 40.4 requires only "some of the same issues of fact or law (not ***all*** the same)"); *Stingley v. Laci Transport, Inc.*, 2020 WL 12182491, at *3–*4 (N.D. Ill. Dec. 1, 2020) (Local Rule 40.4(a) "does not require complete identity of issues in order for cases to be considered related") (quoting *Fairbanks*, 2002 WL 31655277, at *2).

**B.    It Would Be More Efficient to Reassign *Roofers* to This Court's Docket.**

Given this legal and factual commonality, reassignment of *Roofers* to this Court would be far more efficient, saving substantial judicial time and effort, and would avoid the risk of contradictory rulings by different Judges of this Court.  Under Local Rule 40.4(b), related cases should be reassigned when they are (1) "pending in this Court," (2) "the handling of both cases by the same judge is likely to result in a substantial saving of judicial time and effort," (3) "the earlier case has not progressed to the point where designating a later filed case as related would be likely

to delay proceedings in the earlier case substantially," and (4) "the cases are susceptible of disposition in a single proceeding." Local R. 40.4(b). Each requirement is satisfied.

1. Although *Roofers* was initially filed in Rhode Island, it has now been transferred to this Court. *See Roofers* Order Granting Transfer.

2. Assignment of both *Plumbers* and *Roofers* to the same Judge will save substantial judicial time and effort. Beginning with the motions to dismiss, the common legal questions presented should be resolved by the same Judge both for efficiency and to avoid potentially conflicting rulings. That alone is reason to reassign. *See Urban 8*, 2019 WL 2515984, at *3 (reassigning to "ensure consistent rulings on common questions" and to avoid requiring "another [judge] to invest similar time and effort"). In the event the cases proceed to discovery, this dynamic will only amplify, given that the common factual and legal issues the cases present are likely to require overlapping discovery rulings, including the same aspects of the pharmaceutical industry that each case implicates and the same third parties that are named in both complaints. *See Sha-Poppin Gourmet Popcorn LLC v. JP Morgan Chase Bank, N.A.*, 2020 WL 8367421, at *3 (N.D. Ill. Sept. 4, 2020) (reassigning to avoid "requir[ing] each judge to tread much, if not all, of the same ground" and because any differences across cases can be addressed "if necessary, through sound case management practices such as the sequencing of discovery").

3. Reassigning *Roofers* to this Court will not delay proceedings in either case. The cases were filed one month apart and are in substantially the same posture. The Express Scripts Defendants recently filed a motion to dismiss in *Plumbers*, and that motion is scheduled for argument on November 4, 2026. *See Plumbers* Mot. to Dismiss; *see also* Apr. 29, 2026 Minute Entry (ECF 46). In *Roofers*, meanwhile, Caremark has a pending motion to set a briefing schedule under which its motion to dismiss would be fully briefed on September 14, 2026. *See Roofers*

Mot. to Extend.  Those motions, which Caremark expects will raise many overlapping issues, will be ripe for simultaneous resolution.

4. *Plumbers* and *Roofers* are susceptible of disposition in a single proceeding—though the *Roofers* Defendants are not presently seeking consolidation.  The Express Scripts Defendants' motion to dismiss already sets forth many threshold legal and pleading defects that foreclose both *Plumbers* and *Roofers*.  *See Plumbers* Mot. to Dismiss.  And even if these cases are not resolved fully on motions to dismiss, the common legal and factual issues they present will be susceptible to similar resolution.  Assigning both cases to a single judge will also make discovery rulings more efficient—for example, third-party discovery rulings as to the many common drug manufacturers alleged to be participants in the supposed RICO enterprises.  Keeping the cases assigned to two different Judges risks divergent rulings on those common issues that would result in the "messy, duplicative litigation" the judiciary has an interest in avoiding, *Ewing*, 35 F.4th at 594, when assigning them to one poses no such risks.

## **CONCLUSION**

For the foregoing reasons, the Court should reassign *Roofers* to its docket pursuant to Local Rule 40.4.

DATED: May 29, 2026

Respectfully submitted,

*/s/ Seth Horvath*

Enu Mainigi*
Craig D. Singer*
R. Kennon Poteat III*
Benjamin Hazelwood*
**WILLIAMS & CONNOLLY LLP**
680 Maine Avenue SW
Washington, DC 20024
Telephone: (202) 434-5000
emainigi@wc.com
csinger@wc.com
kpoteat@wc.com
bhazelwood@wc.com
(*admitted *pro hac vice* in *Roofers*)

Seth Horvath
**NIXON PEABODY, LLP**
Nixon Peabody LLP
70 W Madison St Suite 5200,
Chicago, IL 60602
Telephone: (312) 977-4400
sahorvath@nixonpeabody.com

*Counsel for CaremarkPCS Health, L.L.C. and CVS Health Corp.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on May 29, 2026, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to all parties in this case by operation of the Court's CM/ECF system.  Parties may access this filing through the Court's system.

*/s/  Seth Horvath*

Enu Mainigi*
Craig D. Singer*
R. Kennon Poteat III*
Benjamin Hazelwood*
**WILLIAMS & CONNOLLY LLP**
680 Maine Avenue SW
Washington, DC 20024
Telephone: (202) 434-5000
emainigi@wc.com
csinger@wc.com
kpoteat@wc.com
bhazelwood@wc.com
(*admitted *pro hac vice* in *Roofers*)

Seth Horvath
**NIXON PEABODY, LLP**
Nixon Peabody LLP
70 W Madison St Suite 5200,
Chicago, IL 60602
Telephone: (312) 977-4400
sahorvath@nixonpeabody.com

*Counsel for CaremarkPCS Health, L.L.C.
and CVS Health Corp.*